IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PRINTFLY CORPORATION | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 24-6367 |
| DEKEO, INC. *ET AL.* | : | |

**ORDER**

**AND NOW**, this 3rd day of October, 2025, upon consideration of Defendants' Motion to Dismiss Count III of Plaintiff's First Amended Complaint (ECF No. 15) and all documents submitted in support thereof and in opposition thereto, it is **ORDERED** that Defendants' Motion to Dismiss Count III is **DENIED**.[1]

**IT IS SO ORDERED.**

BY THE COURT:


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

---

[1] Plaintiff Printfly Corporation has brought the following Lanham Act and state law claims against Defendants Dekeo, Inc., Jiffyshirts.com (US), L.P., and Shirt S&D Management LLC (together, "Jiffy"): Count I – trademark infringement under 15 U.S.C. § 1114; Count II – unfair competition and false designation of origin under 15 U.S.C. § 1125; Count III – false and deceptive advertising under 15 U.S.C. § 1125; and Count IV – trademark infringement under Pennsylvania common law. The claims stem from Jiffy's employment of digital advertising that allegedly infringed upon Printfly's uncontested federal trademark for the term "Rush Order Tees" and contained allegedly false and misleading statements regarding Jiffy's products and services, thereby damaging Printfly's competitor custom T-shirt and promotional goods business. Jiffy has moved to dismiss Count III of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, arguing that the phrases in Jiffy's digital ads with which Plaintiff has taken issue—"fastest delivery," "highest quality," "unbeatable prices," and "ships from Philadelphia"—cannot constitute false advertising under the Lanham Act as a matter of law because they are nonactionable puffery and/or address logistical details rather than the inherent quality of goods.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Lanham Act provides in relevant part: "Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading

description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1).

Printfly has pled that Jiffy utilized paid digital advertisements containing false statements that were created with the intention of inducing consumers within and outside Pennsylvania to purchase products from Jiffy, thereby damaging Printfly's competitor business. These allegations, taken as true, state a claim for false advertising under the Lanham Act.

Jiffy's counterarguments are unavailing at this stage of the proceedings. First, Jiffy asserts that Printfly's allegations in Count III amount to a false association claim rather than a false advertising claim, citing *Parks LLC v. Tyson Foods, Inc.*, in which the Third Circuit Court of Appeals found summary judgment in the defendant's favor proper where a false advertising claim was simply "'a false association claim in disguise.'" (Jiffy Mem., ECF No. 15-1, at 10 (quoting *Parks*, 863 F.3d 220, 226 (3d Cir. 2017)).) However, in *Parks*, the alleged misrepresentation was premised entirely on a consumer mistaking the defendant's product for a product known to have been produced by the plaintiff. *See Parks*, 863 F.3d at 226–27 (3d Cir. 2017) ("PARK'S FINEST is only misleading in the way that Parks suggests if a consumer makes the connection between PARK'S FINEST and PARKS and has in mind a pre-existing association between PARKS and high quality products. This is a false association claim and nothing more."). In contrast, the statements complained of in this case convey impressions of quality and speed that are not dependent on a consumer associating Jiffy's services with Printfly's.

Second, Jiffy argues that the statements contained in its advertisements amounted to nonactionable puffery, noting that "'[w]hether a statement in advertisement is 'puffing' within the meaning of the Lanham Act may be decided on a motion to dismiss.'" (Jiffy Mem. at 6 (quoting *Kaisha v. Lotte Int'l Am. Corp.*, No. 15-5477, 2016 WL 11811824, at *2 (D.N.J. Dec. 13, 2016)).) Although such a determination can be made at the pleading stage where appropriate, "[t]ypically, the finder of fact determines whether a statement qualifies as puffery, 'except in the unusual case where the answer is so clear that it may be decided as a matter of law.'" *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 342–43 (E.D. Pa. 2022) (quoting *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010 (Pa. 2018)) (discussing puffery in the breach-of-warranty context but citing to cases involving Lanham Act puffery analyses). At least some of the statements at issue in this case warrant further consideration with additional context and therefore cannot be ruled puffery on a motion to dismiss.

Third, Jiffy contends that the statement "ships from Philadelphia" cannot be the basis of a false advertising claim, as such a claim must be based on a misrepresentation of an "inherent quality or characteristic" of a product rather than logistical details. (Jiffy Mem. at 10–11 (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997) (affirming dismissal of a false advertising claim because an advertisement inaccurately claiming that a sports news service sent game information "direct from each arena" did not misrepresent an inherent characteristic of the product)).) However, as further explained in *National Basketball Ass'n*, the "inherent quality or characteristic" requirement "is essentially one of materiality," and the court explicitly stated that its decision was based on the fact that there was no existing competitor news service offering true direct-from-arena updates: "[W]e note that if the NBA were in the future to market a rival pager with a direct datafeed from the arenas—perhaps with quicker updates . . . then Motorola's statements regarding source might well be materially misleading." *Nat'l Basketball Ass'n*, 105 F.3d at 855. Similarly, it is plausible that source information about the shipping origin of Jiffy's products would have been material to consumers deciding where to purchase their rush-order custom goods, especially where competitor rush-order services might truly have provided shipping from Philadelphia.

For these reasons, Jiffy's Motion to Dismiss Count III is denied.