IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PRINTFLY CORPORATION** | : |
| Plaintiff, | : Civil Action |
| | : |
| v. | : No. 2:24-cv-06367-RBS |
| | : |
| **DEKEO, INC. et al.,** | : Judge R. Barclay Surrick |
| Defendants. | : |

**Joint Case Report**

The parties, Plaintiff Printfly Corporation ("Printfly" or "Plaintiff") and Defendants Dekeo, Inc., JiffyShirts.com (US), L.P., and Shirt S&D Management LLC (collectively "Jiffy" or "Defendants") submit the following joint case report in accordance with this Court's October 9, 2025 Order.

**I.    Nature of Action**

Plaintiff is an e-commerce company that owns and operates the website www.rushordertees.com ("ROT website") and the trademark "Rush Order Tees", U.S. Serial Number: 87698543 and U.S. Registration Number: 5589059 (the "ROT trademark").  Defendants also own and operate e-commerce companies that do business as "Jiffy" and "JiffyShirts" and operate the website www.jiffy.com (the "Jiffy website"). The parties are competitors in the online custom apparel marketplace.

This Court has jurisdiction over this dispute as Plaintiff's claims arise from the federal Lanham Act 15 U.S.C. §§ 1051 *et seq.* The Court has personal jurisdiction over the Defendants because they consent to jurisdiction and waived any such challenge.

37109248.1

Plaintiff contends that Defendants have unlawfully traded on the ROT trademark by bidding on the "Rush Order Tees" trademark with advertising that contains the term "Rush Order Tees" and infringes on the ROT trademark in an effort to cause customer confusion and profit on the goodwill developed by Printfly in the industry. In the infringing advertising, Defendants utilize false claims such as "fastest delivery", "highest quality", "unbeatable prices" and "ships from Philadelphia" further intended to deceive and confuse customers. Plaintiff contends that Defendants are engaging in such conduct to improperly increase its market share in the custom apparel and promotional products marketplace including by confusing consumers searching for Plaintiff's company, Plaintiff's products, and/or the ROT website and misdirecting them to the Jiffy website, and creating the false and erroneous impression that the products and services provided by Defendants are associated with Plaintiff's, are faster, cheaper, and/or of better quality.

The Defendants (collectively, "Jiffy") contend that Printfly Corporation's claims of trademark infringement and false advertising arising from the Google Ads at issue are *de minimis* in nature, resulting in no cognizable damages to Printfly and no unjust benefit to Jiffy. Specifically, the appearance of the phrase "Rushordertees" within the Google Ads stemmed from an innocent mistake during ad configuration. Google Ads offers a feature called "Dynamic Keyword Insertion" ("DKI") that caused the keyword to auto-populate within the ad headline. Jiffy did place ads in response to the "rushordertees" search keyword—a lawful and uncontested practice. It appears, however, that the DKI feature was mistakenly selected by the Jiffy marketing agency that set up the ads, which caused the "Rushordertees" keyword to appear in the ad itself, which Printfly now contests.

As Jiffy previously disclosed to Printfly the ads in question ran for a limited period: October 24, 2024, to November 14, 2024. Google Analytics reports—copies of which have been

37109248.1

provided to Printfly—show that the ads generated modest clicks and sales: 3,587 impressions, 826 clicks, and 18.13 conversions. In Google Ads parlance, "conversions" approximate the number of clicks that led to completed orders on Jiffy's website. With Jiffy's average order value during the ad campaign at approximately $84, the campaign yielded roughly $1,512 in revenue (18 conversions x $84). The Google analytics' report further shows that Jiffy paid a total of $2,715.31 for the ad campaign, resulting in a net loss for Jiffy. Accordingly, there are no profits subject to disgorgement under Printfly's Lanham Act claims. Any actual damages to Printfly are likewise *de minimis* because it could only have lost at most 18 sales transactions due to the ads.

In addition to these defenses, Jiffy asserts that Printfly's asserted mark, RUSH ORDER TEES, is invalid and unenforceable as a matter of law because it is generic. Under the primary significance test, a term is generic it its primary significance to the purchasing public is in reference to a type of good or service. Here, there is widespread third-party usage of the term in the apparel industry to refer to a type of product, namely the fast delivery of tee shirts. These are detailed in Jiffy's counterclaim. Jiffy therefore asserts genericness as an affirmative defense and as counterclaims seeking a declaration of invalidity due to genericness (Count Three) and cancellation of Printfly's registration (Count One).

As to Printfly's false advertising claims challenging the Google Ads' boasts that Jiffy offers the "fastest" delivery, "highest" quality, and "unbeatable" prices, Jiffy contends that such broad, rhetorical boasts are non-actionable puffery that a reasonable consumer would rely upon as sales talk and not literal assertions of fact. Although the Court denied Jiffy's motion to dismiss based on this puffery defense, Jiffy intends to resubmit the defense at summary judgment. Additionally, Jiffy contends that Printfly will be unable to prove that any of the challenged statements were false,

material, or that they actually deceived or tended to deceive a substantial portion of the intended audience.

Lastly, Jiffy alleges that Printfly's superlative boasts that it has the "quickest turnaround in the industry," "fastest turnaround times," "unbeatable craftsmanship," "highest quality t-shirts," and "unbeatable value" are all untrue and constitute false advertising. While Jiffy maintains that such superlative boasts are puffery, Printfly asserts that they are not and thus Jiffy pleads these false advertising claims in the alternative under Fed. Civ. R. 8(d) in the event that the Court ultimately decides that such boasts are actionable and not puffery.

Plaintiff contends that Defendants' counterclaim is without merit and maintain that their trademark "Rush Order Tees" is valid, enforceable, not generic, and over the twenty (20) plus years of its use the term has become associated with the producer of a product, Plaintiff—not a generic term for a product. Plaintiff further maintains that its "puffery" is distinguishable from Jiffy's "puffery" because—by way of limited example only—while Jiffy maintains that its prices are "unbeatable", which is an absolute that is subject to proof of falsity, Printfly maintains that the value it offers is "unbeatable", a subjective determination that is made by a consumer.

**II.   Causes of Action**

<u>For Plaintiff</u>:

Plaintiff alleged four causes of action Count I - Trademark Infringement (15 U.S.C. § 1117); Count II - Unfair Competition and False Designation of Origin (15 U.S.C. § 1125); Count III - False and Deceptive Advertising (15 U.S.C. § 1125); and Count IV - Common Law Trademark Infringement.

To make out a claim for Trademark Infringement and False Designation of Origin, Plaintiff intends to establish: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A*

*& H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards"). Common law Trademark Infringement requires the same analysis as the federal Lanham Act counterpart. *See e.g. World Entm't, Inc. v. Brown*, CIV. A. No. 09-5365, 2011 U.S. Dist. LEXIS 55182, 2011 WL 2036686, at *2 (E.D. Pa. May 20, 2011) ("The test for common law trademark infringement and unfair competition is essentially the same as the test for infringement and unfair competition under the Lanham Act.")

To make out their claim for False Advertising, Plaintiff intends to establish: "1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Groupe SEB United States, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014).

For Defendants:

To prove Printfly's RUSH ORDER TEES mark is generic and unenforceable, Jiffy must prove that members of the relevant public primarily use or understand the term to refer to a particular type of good or service. *See E.T. Browne Drug Co. v. Cocare Products, Inc.*, 538 F.3d 185, 192-195 (3d Cir. 2008).

As to Jiffy's counterclaim for false advertising, the proof elements are the same as those identified above with respect to Printfly's false advertising claim.

Jiffy also asserts that a with-prejudice dismissal and settlement with release of a prior 2020 lawsuit in this Court by Printfly against Jiffy, No. 2:20-cv-00732-GEKP (E.D. Pa.), bars this action

because Printfly sued on the same advertising boasts that it attacks here, namely Jiffy touting the best prices, fastest delivery, and best quality. To prove that res judicata bars this action, Jiffy must prove (1) a final judgment on the merits; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action. *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).

### III.  Scheduling

**A.  Initial Disclosures:** The parties intend to exchange initial disclosures pursuant to F.R.C.P. 26(a)(1) on or before November 21, 2025.

**B.  Discovery:**

<u>Printfly's Position</u>: Printfly seeks ninety (90) days from the pretrial conference to conduct factual discovery.

<u>Jiffy's Position</u>: Jiffy seeks 180 days of fact discovery. Jiffy respectfully disagrees that 90 days is enough time to serve and respond to written discovery, gather, produce, and review documents and E-Discovery, resolve discovery disputes, conduct third-party discovery (which both parties intend to seek), potentially adding the third-party defendant marketing agency as Printfly states below that it may do, taking fact witness depositions, and obtaining any necessary follow up discovery. This need for additional time is heightened because the holiday season is about to begin, which typically slows case progress as parties and counsel have personal, travel, family, vacation, and religious obligations during that period.

While the parties disagree about the time needed for fact discovery, they agree about the timing of expert disclosures and discovery as follows:

1. **Plaintiff's expert report(s) on its claims:** 45 days after fact discovery cutoff.

2. **Defendants' expert report(s) on their counterclaims:** 45 days after fact discovery.

3. **Responsive expert reports:** 45 days after affirmative report deadline.

4. **Depositions of experts if any:** 45 days after responsive report deadline.

37109248.1

  **C.**  **Joinder of additional parties:** Plaintiff anticipates that joinder of additional parties may be necessary, depending on Defendants' responses to discovery. Defendants informally represented to Plaintiff that a third party marketing agency was involved with the marketing that led to the Google Ads at issue. To the extent that is accurate, Plaintiff believes that joining the third party marketing agency may be necessary and respectfully requests the opportunity to make that decision after the parties have conducted discovery regarding the same.

**IV.**  **Settlement Negotiations**

  The parties have not engaged in substantive settlement negotiations. On behalf of the Plaintiff, a settlement conference and/or mediation before a magistrate may be worthwhile after the parties have conducted limited discovery and before the parties begin to engage experts and/or incur those costs. Jiffy is always open to discussing settlement, and believes it would make sense to start settlement discussions by having Printfly, as plaintiff, make a settlement demand when it has the discovery or information needed to do so.

**V.**  **Counsel participating in the Conference**

  <u>On behalf of Plaintiff</u>: Anton Kaminsky, Esq. of Kaminsky Law, LLC

  <u>On behalf of Defendants</u>: Matthew J. Cavanagh (McDonald Hopkins), Alexander Bilus (Saul Ewing)

Dated: November 10, 2025    Jointly submitted,

            **KAMINSKY LAW, LLC**

            BY: /s/ Anton Kaminsky
               Anton Kaminsky, Esquire
               207 Buck Rd. Ste 2
               Southampton, PA 18966
               kaminsky.esq@gmail.com
               ***Counsel for Plaintiff***

    s/ Matthew J. Cavanagh
Matthew J. Cavanagh (OH 0079522)
(admitted *pro hac vice*)
McDonald Hopkins LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
mcavanagh@mcdonaldhopkins.com

and

Alexander R. Bilus (PA 203680)
Saul Ewing LLP
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
t 215.972.7177 | f 215.972.4166
alexander.bilus@saul.com

***Counsel for Defendants***